# 14-3746-cv

# United States Court of Appeals

*for the*

# Second Circuit

EUGENE DIMATTEO,

*Plaintiff-Appellant,*

– v. –

SWEENEY, GALLO, REICH & BOLZ, L.L.P., DAVID A. GALLO,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

SCHLANGER & SCHLANGER LLP
*Attorneys for Plaintiff-Appellant*
343 Manville Road
Pleasantville, New York 10570
(914) 946-1981

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.      STATEMENT OF JURISDICTION ............................................................1

II.     STATEMENT OF ISSUES .........................................................................1

III.    STATEMENT OF THE CASE .....................................................................3

IV.     STATEMENT OF FACTS ...........................................................................4

V.      SUMMARY OF THE ARGUMENT ..........................................................12

VI.     ARGUMENT ..............................................................................................18

        A.    The District Court's Decision Is Subject To De Novo Review ..........18

        B.    False and Misleading Statements Made by Attorneys in State
              Court Actions Give Rise to Liability Under the FDCPA....................18

        C.    The Cases Relied Upon By The District Court To Exempt
              Defendants' Misconduct From Coverage Under The FDCPA
              Are Inapposite ...................................................................................20

              1.    The *Kropelnicki* Dicta Is Inapposite .........................................20

              2.    The *Gabriele* (Summary Order) Footnote Dicta Is
                    Inapposite and Incorrect...........................................................26

        D.    The Court Below Erred By Departing From The Well
              Established "Hypothetical Least Sophisticated Consumer"
              Standard .............................................................................................39

        E.    The District Court Erred With Regard To Its Application of
              1692g(b), Which Does Not Either Under The Facts Of This
              Case (Or More Generally) Trigger A Waiver Of A
              Consumer's Independent Claims Of Collection Misconduct .............47

        F.    The District Court Erred In Finding That Commencement Of
              A Summary Eviction Proceeding Was Justified Under New
              York Law.............................................................................................50

VII.    CONCLUSION...........................................................................................54

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

80 Delancey, LLC v. Gee Hong Lee,
25 Misc. 3d 131(A) (N.Y. App. Term 2009)............................................11, 52

Allen ex Rel. Martin v. LaSalle Bank, N.A.,
629 F.3d 364 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1141, 181 L.
Ed. 2d 1016 (U.S. 2012) ............................................................................25

Bowens v. LR Credit 10, LLC,
2011 U.S. Dist. LEXIS 143737 (W.D.N.Y. Dec. 5, 2011) ..........................19

Clomon v. Jackson,
988 F.2d 1314 (2d Cir. 1993) .................................................................41, 42

Coble v. Cohen & Slamowitz, LLP,
824 F. Supp. 2d 568 (S.D.N.Y. 2011) ........................................................43

Columbus Prop. v. I S K S Realty Corp.,
163 Misc. 2d 446 (N.Y. Civ. Ct. 1994) ......................................................46

Derisme v. Hunt Leibert Jacobson P.C.,
No. 10 Civ. 23, 2012 U.S. Dist. LEXIS 101922, 2012 WL 3000386
(D. Conn. July 23, 2012) .............................................................................35

Diamond v. Corcoran,
1992 U.S. Dist. LEXIS 22793 (W.D. Mich. Aug. 3, 1992) .........................49

Diaz v. Portfolio Recovery Assocs., LLC,
2012 U.S. Dist. LEXIS 72724 (E.D.N.Y. May 23, 2012).................19, 32, 44

Dikeman v. National Educators,
81 F.3d 949 (10th Cir. 1996) ......................................................................25

Ellis v. Solomon & Solomon, P.C.,
591 F.3d 130 (2d Cir. Conn. 2010) ...............................................9, 40, 47, 48

Escambia County Utilities Authority v. Amerada Hess Corp. (In re Methyl
Tertiary Butyl Ether Prods. Liab. Litig.),
2005 U.S. Dist. LEXIS 753 (S.D.N.Y. Jan. 18, 2005) .......................... 36-37

Evory v. RJM Acquisitions Funding L.L.C.,
505 F.3d 769 (7th Cir. 2007) ......................................................................26

Exxon-Mobil Corp. v. Saudio Basic Indus. Corp.,
    544 U.S. 280 (2005)......................................................................20

Fedele v. Filiato,
    N.Y.L.J., June 6, 1990 (App. Term, 2d & 11th Dists) ................................53

Finkelstein v. Mutual Redevelopement Houses, Inc.,
    186 A.D.2d 90 (1st Dep't 1992) ....................................................51

Gabriele v. Am. Home Mortg. Servicing,
    503 Fed. Appx. 89 (2d Cir. 2012).........................................*passim*

Gearing v. Check Brokerage Corp.,
    233 F.3d 469 (7th Cir. Ill. 2000).......................................... 19-20, 29

Goldman v. Cohen,
    445 F.3d 152 (2d Cir. N.Y. 2006) ......................................18, 19, 36

Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti,
    374 F.3d 56 (2d Cir. N.Y. 2004) ....................................................19

Grdn v. Leiken, Ingber & Winters, P.C.,
    643 F.3d 169 (6th Cir. 2011) ........................................................20

Great Park Corp. v. Goldberger,
    41 Misc. 2d 988 (Civ. Ct., N.Y. Co. 1964) ..................................46

Greco v. Trauner, Cohen & Thomas, L.L.P.,
    412 F.3d 360 (2d Cir. 2005) ...........................................................41

Gregory v. Colonial DPC Corp. III,
    234 A.D.2d 419 (2d Dep't 1996) ....................................................51

Guerrero v. RJM Acquisitions LLC,
    499 F.3d 926 (9th Cir. 2007) ........................................................25

Heintz v. Jenkins,
    514 U.S. 291 (1995)......................................................18, 19, 25, 36

Hooks v. Forman, Holt, Eliades & Ravin, LLC,
    717 F.3d 282 (2d Cir. N.Y. 2013) ................................................49

Jacobson v. Healthcare Fin. Servs.,
    516 F.3d 85 (2d Cir. N.Y. 2008) ............................................41, 48

Kropelnicki v. Siegel,
    290 F.3d 118 (2d Cir. 2002) .............................................*passim*

Lee v. Kucker & Bruh, LLP,
　　958 F. Supp. 2d 524 (S.D.N.Y. 2013) .......................................... 32

Lemire v. Wolpoff & Abramson. LLP,
　　256 F.R.D. 321 (D. Conn. 2009) .................................................. 24

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,
　　523 U.S. 26 (U.S. 1998) ............................................................... 37

Maguire v. Citicorp Retail Servs.,
　　147 F.3d 232 (2d Cir. 1998) ......................................................... 42

Mascoll v. Strumpf,
　　2006 U.S. Dist. LEXIS 69061 (E.D.N.Y. Sept. 25, 2006) ........... 20

Matter of Jo-Fra Props., Inc.,
　　27 A.D.3d 298 (1st Dep't 2006) ................................................... 53

Mayflower Assocs. v. Grey,
　　N.Y.L.J., Mar. 1, 1994 (App. Term, 1st Dep't) ........................... 53

McCollough v. Johnson, Rodenburg & Lauinger, LLC,
　　637 F.3d 939 (9th Cir. 2011) ............................................. 20, 30, 31

Midland Funding LLC v. Brent,
　　644 F. Supp. 2d 961 (N.D. Ohio 2009) ....................................... 20

Miller v. Upton, Cohen & Slamowitz,
　　687 F. Supp. 2d 86 (E.D.N.Y. 2009) ...................................... 19, 44

New York Univ. v Benison,
　　NYLJ, Oct. 27, 1988 (App Term, 1st Dept) ................................ 52

New York v. Betancourt,
　　79 Misc. 2d 907 (App. Term, 1st Dept 1974) .............................. 46

Okyere v. Palisades Collection, LLC,
　　961 F. Supp. 2d 508 (S.D.N.Y. 2013) ................................ 28, 29, 33

Park Holding Co. v. Power,
　　554 N.Y.S. 2d 861 (App. Div. 1st Dep't 1990) ...................... 11, 52

Park Holding Co. v. Power,
　　61 A.D.2d 143 (1st Dep't 1990) ................................................... 50

Pellechia v. OneWest Bank, FSB,
　　2013 U.S. Dist. LEXIS 36718 (D. Conn. Mar. 18, 2013) ............ 24

Poulakas v. Ortiz,
    25 Misc. 3d 717 (Civ. Ct., N.Y. Co. 2009) ...................................................46

Ruiz v. Chwatt Assocs.,
    247 A.D.2d 308 (1st Dep't 1998)...........................................................51, 52

Sayyed v. Wolpoff & Abramson,
    485 F.3d 226 (4th Cir. 2007) .................................................................25, 26

Setton v. Cohen Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP,
    2014 U.S. Dist. LEXIS 133772 (E.D.N.Y. Sept. 22, 2014).........................23

Sherman v. Mamaroneck Union Free Sch. Dist.,
    340 F.3d 87 (2d Cir. 2003) .........................................................................18

Simmons v. Roundup Funding, LLC,
    622 F.3d 93 (2d Cir. 2010) ....................................................................35, 36

Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y.,
    346 F.3d 264 (2d Cir. 2003) .......................................................................18

Sykes v. Mel S. Harris,
    757 F. Supp. 2d. 413 (S.D.N.Y. 2010) ..............................................19, 29, 43

Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.,
    1995 U.S. Dist. LEXIS 17804 (E.D.N.Y. Nov. 16, 1995) ...........................32

Tromba v. M.R.S. Assocs.,
    323 F. Supp. 2d 424 (E.D.N.Y. 2004)..........................................................23

Wallace v. Washington Mut. Bank, F.A.,
    683 F.3d 323 (6th Cir. June 26, 2012) .....................................................20, 30

Walsh v. Law Offices of Howard Lee Schiff, P.C.,
    2012 U.S. Dist. LEXIS 136408 (D. Conn. Sept. 24, 2012) ..........................24

Williams v. Gallagher,
    NYLJ, Mar. 6, 1991 (App. Term, 1st Dep't)..........................................51-52

Wilson v. One Ten Duane St. Realty Co.,
    123 A.D.2d 198 (1st Dep't 1987) ................................................................53

Wright v. Phillips & Cohen Assocs.,
    2014 U.S. Dist. LEXIS 126804 (E.D.N.Y. Sept. 9, 2014)...............13, 22, 23

**Statutes & Other Authorities:**

15 U.S.C. § 1692 ...................................................................1, 3, 8

15 U.S.C. § 1692(b) .....................................................................37

15 U.S.C. § 1692e ..................................................................*passim*

15 U.S.C. § 1692e(2) ....................................................................29

15 U.S.C. § 1692e(2)(A) ..........................................................30, 33

15 U.S.C. § 1692e(5) ....................................................................44

15 U.S.C. § 1692e(10) ......................................................30, 34, 49

15 U.S.C. § 1692f ..................................................................*passim*

15 U.S.C. § 1692f(1) ...............................................................12, 33

15 U.S.C. § 1692g .......................................................19, 48, 49, 50

15 U.S.C. § 1692g(a) .....................................................................9

15 U.S.C. § 1692g(b) .............................................................*passim*

15 U.S.C. § 1692g(c) .....................................................................49

15 U.S.C. § 1692k(d) .....................................................................1

15 U.S.C. § 1692o ....................................................................37, 39

15 U.S.C. § 1962i ....................................................................19, 36

16 C.F.R. § 901.4 ....................................................................37, 38

CPLR Article 4 ..............................................................................45

Fed. R. App. P. 4(b) ........................................................................1

Fed. R. Civ. Proc. 12(b)(6) ........................................................3, 8

Fed. R. Civ. P. 54(a) .......................................................................1

H.R. 2892 ......................................................................................36

H.R. 6706 ......................................................................................36

New York Judiciary Law § 487 .................................................3, 55

Real Property Law § 235-f ......................................................17, 51

RPAPL Article 7 ......................................................................44-45

# I.  STATEMENT OF JURISDICTION

This is an appeal from the Judgment entered in the District Court, Southern District of New York, on September 12, 2014. The Judgment dismissed the complaint in this action, finding that the complaint had failed to set forth a valid cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et. seq.* ("FDCPA").  The Court declined to exercise supplemental jurisdiction over Appellant's New York Judiciary Law claim.    The Judgment constituted a final, appealable order.  Fed. R. Civ. P. 54(a).

The Plaintiff filed a timely notice of appeal under Fed. R. App. P. 4(b) on October 6, 2014.

This Court has jurisdiction over the Plaintiff's appeal pursuant to 15 U.S.C. § 1692k(d).

# II. STATEMENT OF ISSUES

Issue #1:  Is otherwise actionable misconduct by a debt collector in violation of the FDCPA, including wrongfully commencing a summary eviction proceeding, and serving upon the consumer a Rent Demand and, subsequently, a state court non-payment Petition that contains false statements and omissions, rendered non-actionable on grounds that the consumer obtained counsel shortly after receiving the Rent Demand?

Answer: No

Issue #2:  Is state court collection misconduct properly deemed not to violate the FDCPA on grounds that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers,'" *i.e.* is there a judge-created state court litigation exception to the FDCPA?

Answer:  No.

Issue #3:  Do otherwise actionable misrepresentations made to the consumer and/or the state court become non-actionable under the objective least sophisticated consumer standard where the particular consumer- tenant in question was not misled, may have understood the reasons for the debt collector's conduct, and/or retained counsel shortly after receiving the Rent Demand?

Answer:  No.

Issue #4:  Does the fact that the eviction notice contained a statement that "if any portion of this claim is disputed, you are to notify us within 30 days after receipt of this notice, indicating the nature of the dispute, as to the amount due or any part thereof.  If we do not hear from you within said thirty (30) days, we will assume the debt to be valid as stated in the Notice. . ." bar a consumer's claim where, as here, the parties did not address below whether the consumer responded within 30 days of the notice disputing the claim and the consumer, in any event,

does not bring any claim related to Defendants' obligations under § 1692g(b), but rather under § 1692e and § 1692f?

Answer: No.

Issue #5: Does a debt collection attorney representing a landlord that wishes to preserve its rights with regard to succession of a rent-controlled apartment by a co-occupant act properly under New York law and the FDCPA in commencing a summary eviction proceeding alleging simple non-payment, where all the rent has been tendered?

Answer: No.

## III. STATEMENT OF THE CASE

This case was commenced on November 26, 2013, by service of a Complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.,* and New York Judiciary Law § 487.

On February 14, 2014, Defendants, Sweeney, Gallo, Reich & Bolz, LLP ("SGRB") and David Gallo (collectively, "Defendants") moved to dismiss pursuant to Fed. Civ. R. Proc. 12(b)(6), alleging that the Complaint had failed to state a cause of action.

After full briefing, on September 9, 2014, the Court below rendered a decision dismissing the complaint and on September 12, 2014, a judgment was entered by the clerk of the court, reflecting the Court's decision. A-102. [1]

## IV.   STATEMENT OF FACTS

Eugene DiMatteo ("Mr. DiMatteo" or "Appellant") is a rent-controlled tenant at 183 Thompson Street, Apartment C-1, New York, NY, ("the Apartment"). (Complaint ¶ 15, at A-8). Martin Hirko ("Mr. Hirko") has lived in the Apartment with Mr. DiMatteo in a family-like relationship for many years and continues to reside there together with Mr. DiMatteo now. (Complaint ¶ 19, at A-9).

Mr. DiMatteo and Mr. Hirko maintain a joint checking account. (Complaint ¶ 20) and Mr. Hirko handles the household's finances. (Complaint ¶ 21, at A-9). Although there has been ongoing friction between Mr. DiMatteo and his landlord, Tom Sullivan LLC ("Sullivan") regarding rent payments made by Mr. Hirko, Sullivan has previously accepted checks signed solely by Mr. Hirko for rent payments for the Apartment. (Complaint ¶ 22, at A-9).

Starting in September of 2012, Sullivan refused to accept payments tendered by Mr. Hirko for rent for the Apartment. (Complaint ¶ 23, at A-9). Each month, Mr. Hirko tendered the rent for the Apartment to Sullivan. (Complaint ¶ 24, at A-9)

---

[1] This is a reference to the Record on Appeal. All future references are to A-___, signifying the page number within the Record on Appeal.

4

Mr. Hirko sent letters along with the rent payments, making it clear that the payments tendered were intended to pay the rent for the Apartment. (Complaint ¶ 25, at A-9).

On or about September 6, 2013, Defendant SGRB sent a dunning letter to Mr. DiMatteo, alleging that Mr. DiMatteo owed $5347.03 to Sullivan, and along with the letter, included a rent demand (collectively, "Rent Demand") (Complaint ¶ 27, at A-9). The Defendants sent this Rent Demand even though Sullivan had received a negotiable check for the entire amount due and owing (Complaint at ¶ 26, at A-9) which fact the Defendants admitted. (A-35).

At the time Appellant received the Rent Demand, he was not represented by counsel. Order at p. 7, n.3, A-100.

Subsequent to sending the Rent Demand, Defendant SGRB, in a verified pleading signed by Defendant Mr. Gallo (attached to Complaint as "Exhibit D" and found at A-23 through A-34), initiated a summary eviction proceeding against Mr. DiMatteo and Mr. Hirko titled Tom Sullivan LLC v. Eugene DiMatteo and Martin J. Hirko et al., in the Housing Part of New York Civil Court, (the State Court Action) seeking to evict Mr. DiMatteo and Mr. Hirko for non-payment of rent. (A-23 to A-33).

Importantly, nothing in that State Court petition gave any indication that Mr. DiMatteo had tendered rent on a monthly basis by means of checks proffered by Mr. Hirko.

Rather, the allegations contained in the verified pleading indicated that this was a standard case of non-payment, such as is typically and appropriately addressed in a summary eviction proceeding.

The Defendants in the Federal Court action, SGRB and Mr. Gallo, were not parties to the State Court Action seeking to evict Mr. DiMatteo but acted as the debt collection attorneys, attempting to collect an alleged debt owed by Mr. DiMatteo to Sullivan.

The Defendants' verified pleading contained various false statements:

(1) Defendants alleged that Mr. DiMatteo had entered into possession under a written agreement between himself and the landlord, wherein Respondent promised to pay to the Landlord as rent $296.71 in advance on the 1st day of each month. (Complaint, ¶ 30; A-10). This statement was false, in that no such written agreement existed.

(2) Defendants alleged that $5,763.98 was due to Sullivan. (Complaint, ¶ 31-32, A-10) This statement was false, in that Sullivan had already received the full rent; and

(3) Defendants alleged that $750 in legal fees were due. (Complaint, ¶ 31-32, A-10). This statement was false, because there was no entitlement to such fees under any contract between the parties or pursuant to any statute.

In addition, the very commencement of the State Court Action by the Defendants was deceptive and unfair. (Complaint at ¶ 39, A-11). By bringing a summary eviction proceeding seeking eviction based on alleged non-payment, when the underlying rent had actually been tendered by Mr. Hirko and Mr. DiMatteo, the Defendants hoped to mislead the state court and regain the apartment on false pretenses or at least to use such a threat to pressure Mr. DiMatteo and Mr. Hirko into an unconscionable settlement.

Appellant by and through counsel responded to the State Court Action by sending a letter dated November 1, 2013, that disputed liability and proposed a settlement that included, *inter alia*, exchange of mutual releases in return for payment by Defendants to Appellants of a sum certain. A-70 through A-71, and subsequently by filing a Notice of Appearance and Answer.

Sullivan and the Respondents resolved the State Court Action on November 5, 2013 by Stipulation, pursuant to which the State Action was discontinued without prejudice and the Landlord acknowledged that Mr. Hirko and Mr. DiMatteo "have tendered rent on a monthly basis" but that these funds had not

been cashed; that the uncashed checks, totaling $6,180.93 "represent[ed] all rent due" for the apartment.  A-35 through A-36.

The Appellees/Defendants herein were not parties to the State Court Action proceeding and the Stipulation, in any event, involves only a dismissal of claims without prejudice, and does not include any release or waiver of any kind.    A-35 through A-36.

The instant federal action was commenced on November 26, 2013 by service of a Complaint alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et. seq.*, and New York's Judiciary Law.

On February 14, 2014, Defendants moved the District Court pursuant to Fed. Civ. P. Rule 12(b)(6), alleging that the Complaint had failed to state a cause of action.

Defendants argued, principally, that Appellants FDCPA claim failed because Sullivan had been justified in refusing checks signed by Hirko on Hirko and DiMatteo's joint account in order to protect its ability to contest Mr. Hirko's right of succession to the rent controlled apartment in the event of Mr. DiMatteo's departure (ECF Doc. # 10, pp. 9-11, 15-17) in the future and that the subsequent filing of the summary eviction proceeding on this basis was therefore lawful (id. at p. 11-12, 16-17).  Defendants also argued that the Stipulation entered into by the state court litigants constituted a waiver of Appellants claims and precluded further

8

litigation (id. at pp. 13-15). Finally, Defendants contended that "plaintiff by Counsel had ample opportunity to challenge under state and city law the form and contents of the Rent Demand in state landlord-tenant litigation." (id. at pp. 13-14.)

Appellant opposed the motion, addressing each of the points raised by Defendants.

After full briefing, on September 9, 2014, the Court below rendered a Memorandum and Order dismissing the Complaint (the "Order") A-94 through A-101. Shortly thereafter, a judgment was entered by the clerk of the court, reflecting the Court's decision. A-102.

The Order held that Appellants claims failed because "DiMatteo was well aware that the landlord refused to accept checks not signed by him, and that that was the reason why SGRB's Demand Letter asserted that his rent payments were in arrears." Order at 5, A-98.

Citing to 15 U.S.C. § 1692g(a) and Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2nd Cir. 2010), the Order further held that "absent a dispute notice from DiMatteo" within 30 days of the Rent Demand, "SGRB was within its rights" to commence the summary eviction proceeding, so long as "such activities did not 'overshadow or contradict the validation notice'" contained in the Rent Demand. Order at p. 5, A-98.

The Order further stated that the "allegation that the Housing Court lawsuit itself represents an independent FDCPA violation" failed because DiMatteo was "represented by counsel in that proceeding", and had raised FDCPA issues during the negotiations that resulted in the Stipulation. Id. at p. 6, A-99.

The Order noted that Appellant's counsel's November 1, 2014 letter had stated that Defendants had "violated the FDCPA but suggested that 'this dispute can be resolved without Federal court litigation." Id. at p. 2, A-95  The Order does not acknowledge, however, that the letter proposed  payment by Defendants' to Appellant of a sum certain and the exchange of mutual releases as a means of resolving any potential FDCPA litigation, and that Defendants were not amenable to the proposed resolution.  A-71.

The Order acknowledged that the "Settlement itself does not mention the FDCPA", nor does the Order contend that the Settlement contained any release or waiver of rights with regard to Appellants' claims.  The Court nonetheless states that the language of the Stipulation is grounds for dismissal because "it is clear that both parties understood that the landlord had been refusing to accept checks from the nonstatutory tenant out of concern that the nonstatutory tenant might be able to succeed DiMatteo as the rent-controlled tenant."  Id. at p. 6, A-99.

The Order reasoned that, because the parties were aware of the history of the dispute regarding Mr. Hirko's rights as a non-statutory tenant, and because

10

Appellant was represented by counsel, Defendants' statements were false only "in some technical sense" and did not constitute a deceptive act under the least sophisticated consumer standard. Id. at 6-7, A-99 through A-100.

In a footnote, the Court then stated that "for the same reasons, there is no plausible FDCPA claim on the grounds that Defendants misrepresented that there was a written lease and that 'legal fees' were due. Id. at 7. n.3, A-100. The Court went on to state in the footnote that "whether the lease was written is immaterial" and that Defendants' false statement regarding its entitlement to attorneys' fees was not actionable because it "was not made in the Demand Letter, but rather in the subsequent Housing Court proceeding where DiMatteo was represented by counsel". Id. at 7, A-100.

The Order further characterized "the landlord's position" in refusing the proffered checks and bringing the summary eviction proceeding as "understandable and appropriate" in light of its concern regarding Mr. Hirko's potential successor rights. citing to Park Holding Co. v. Power, 554 N.Y.S. 2d 861, 863 (App. Div. 1st Dept. 1990) and 80 Delancey, LLC v. Gee Hong Lee, 25 Misc. 3d 131(A) (N.Y. App. Term 2009)(unpublished). Order at p. 6, A-99.

Having found no violation of the FDCPA, the District Court declined to exercise supplemental jurisdiction over Appellant's state law claim. A-100.

This appeal followed.

11

# V. SUMMARY OF THE ARGUMENT

It is undisputed that the defendants brought the State Court Action seeking eviction for nonpayment of rent even though all the rent for Mr. DiMatteo's apartment had been tendered.

It is equally clear that the Defendants made misstatements of facts in their Rent Demand and in the summary eviction proceeding petition , and that – despite the non-existence of any contract or statute that would authorize the collection of attorney's fees  -- they sought to collect their own attorneys' fees from Mr. DiMatteo.  See, e.g. § 1692f(1) which prohibits the collection of any amount "incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law".

Despite these clear-cut violations, the Court below dismissed Mr. DiMatteo's action.

The District Court below based its decision on a number of erroneous arguments that constitute reversible error:

`    First, the district court based its decision on dicta found in <u>Kropelnicki v. Siegel</u>, 290 F.3d 118, 128 (2nd Cir, 2002)  where this Court, in rejecting an FDCPA claim based upon the contention that a collection attorney misled a consumer's attorney during telephone negotiations, stated that "while this is not an issue on which we need to rule today", "[w]here an attorney is interposed as an

intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."

As set forth below, numerous cases have sensibly limited the <u>Kropelnicki</u> dicta to situations in which the statement in question is directed *solely* to the consumer's counsel, as it was in <u>Kropelnicki</u>.  Under this reading, rather than constituting a new judicially created exemption that has the perverse effect of stripping rights from consumers with otherwise valid claims who obtain counsel, the <u>Kropelnicki</u> dicta merely stands for one reasonable interpretation of what constitutes a "communication" to a consumer.  See, e.g. <u>Wright v. Phillips & Cohen Assocs.</u>, 2014 U.S. Dist. LEXIS 126804, 9-10 (E.D.N.Y. Sept. 9, 2014) (discussed below, and adopting this understanding of <u>Kropelnicki</u>).

In the instant case, in contrast, there can be no claim that the misstatements at issue were directed solely to counsel, and not to the consumer.  To wit, the Rent Demand and the pleadings were both, on their face, directed to the consumer and both were served upon the consumer.  Moreover, court pleadings are, both under the text of the FDCPA and Supreme Court and Second Circuit precedent, indisputably "communications" covered by the statute.

Second, the District Court relied erroneously on Summary Order dicta found in a footnote in <u>Gabriele v. Am. Home Mortg. Servicing</u>, 503 Fed. Appx. 89 (2d Cir.

2012)(Summary Order) for the proposition that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers'" Order at p. 5, A-98, citing  Gabriele  at 96.  This, too, was reversible error, as the FDCPA, on its face, as well as under binding Supreme Court and Second Circuit precedent (as well as pursuant to a host of cases around the country, including multiple sister circuits) covers the litigation conduct of collection attorneys including both the wrongful commencement of collection actions and statements made in the pleadings submitted in those actions.

Third, the District Court's mistakenly relied on Gabriele (Summary Order) for the proposition that false statements in a rent demand and petition  that seek intentionally to mischaracterize every aspect of the dispute between the parties, and which would indisputably would otherwise be actionable, are rendered merely "technically false" (and thus permissible) where the individual consumer in question would not have been misled because he knew the history of the dispute between the parties and/or because he was represented by counsel.  Order at p.7, A-100.  The District Court's interpretation constitutes a profound distortion of this Circuit's FDCPA jurisprudence.  Specifically, it is well established that whether a collection communication to a consumer is deceptive is to be judged under an objective standard involving the "hypothetical least sophisticated consumer" and does not require reliance by the specific plaintiff in a given case.

Put differently, a statement that would otherwise be material and deceptive (*e.g.* that alleges, as here, that a consumer has not tendered rent, and owes attorney's fees when neither is true) does not become immaterial because the particular consumer in question is not deceived, knows the reason the debt collector is making the various misrepresentations, and/or hires counsel to help him protect his rights.

To hold otherwise is to depart from the FDCPA's objective, least sophisticated consumer standard and drift toward a subjective, reliance-based standard that, even worse, penalizes consumers faced with otherwise unlawful collection activities for hiring counsel.

Here, the Petition would give even a sophisticated hypothetical reader an understanding of the dispute as one involving garden variety non-payment and attorney's fees owed pursuant to a contract, and fails to disclose that the tenant was not a signatory to any such contract (or otherwise subject to attorney's fees as a matter of law) and had, in fact, proffered all rent owed by checks written on his joint account and signed by the apartment's co-occupant. These misstatements are clearly actionable under an objective, hypothetical least sophisticated consumer standard.

Moreover, because the Petition was directed not only to the consumer but to the state court, Appellant's has valid claims even if, contrary to law, one were to

15

import all of a particular litigant's background knowledge, education, as well as his counsel's knowledge etc. into the "hypothetical least sophisticated consumer" test (thus rendering it, in reality, a "subjective, the-consumer-in-question" test).

Fourth, the District Court erroneously held, *sua sponte*, that by failing to dispute the purported debt within 30 days of receiving the initial communication, Appellant waived his right to challenge the debt collectors' tactics and misrepresentations under the FDCPA, barring any subsequent challenge to the amount owed.

This holding is contrary to the law and assumed incorrectly and without any basis that the November 1, 2013 letter from Appellant's counsel to Defendants was the first communication sent by Appellant disputing the debt. On a factual level, it is important to note in this regard that whether the consumer disputed the debt within 30 days of receiving the eviction notice was never addressed by the parties below at any stage of the proceeding and was raised for the first time in the Court's Order, in which the Court incorrectly assumed the answer to be no and then attached great significance to this "fact".

Moreover, the District Court's reading of the 30 day notice as a general waiver of FDCPA claims (rather than triggering a right to have the debt collector validate the debt prior to taking certain further collection action) is contradicted by

both the text of the FDCPA and the case law, and is simply incorrect as a matter of law.

Fifth, and finally, the District Court erred inasmuch as it based its decision on an erroneous belief that "the landlord's position was understandable and appropriate" under New York state law. As set forth below, due to changes in New York state law, a Landlord's rights are no longer put at risk by acceptance of checks written on the tenant and co-occupant's joint account and signed by the co-occupant.

Specifically, prior to the adoption of the Roommate Law, codified at Real Property Law § 235-f, a tenant could be evicted for allowing an unrelated person to share his apartment. Case law had evolved holding that a landlord who accepted rent checks from a roommate had waived his objections to that roommate and the presence of the roommate could not serve as the basis for an eviction action. In 1983, however, New York passed the Roommate Law, legalizing the presence of roommates. Since that time, there has no longer been any reason for landlords to refuse to cash checks signed by non-named tenant roommates.

Moreover, even if this weren't the case, a Landlord's options simply do not include commencing a summary eviction proceeding and mis-portraying the dispute in legal pleadings as one involving garden variety non-payment and

entitlement to attorney's fees under a non-existent contract, rather than one of preservation of the right to challenge a co-occupant's succession rights.

The District Court's Order should be reversed.

## VI.    ARGUMENT

### A. The District Court's Decision Is Subject To De Novo Review

The District Court's granting of summary judgment to the defendants is subject to de novo review. Smith ex rel. Estate of Smith v. Fed. Reserve Bank of N.Y., 346 F.3d 264, 267 (2d Cir. 2003); Sherman v. Mamaroneck Union Free Sch. Dist., 340 F.3d 87 (2d Cir. 2003).

### B. False and Misleading Statements Made by Attorneys in State Court Actions Give Rise to Liability Under the FDCPA

As a preliminary matter, it is important to note that the Supreme Court, the Second Circuit, District Courts in this jurisdiction and Appellate and District Courts around the country have held that the FDCPA applies to the litigation activities of collection attorneys, including deceptive statements in state court pleadings.

The Supreme Court's decision in Heintz v. Jenkins, 514 U.S. 291, 292 (1995) explicitly held that the term "debt collector" as defined under the FDCPA "applies to a lawyer who 'regularly,' *through litigation*, tries to collect consumer debts."

The Second Circuit recognized Heintz' scope in Goldman v. Cohen, 445 F.3d 152, 155-157 (2d Cir. N.Y. 2006), which cited Heintz as additional support in

18

holding that "communications" under the FDCPA include state court pleadings. [2]
See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d
56, 60 (2d Cir. N.Y. 2004) ("The Supreme Court has made it clear that the FDCPA
applies to attorneys 'regularly' engaging in debt collection activity including such
activity in the nature of litigation.").

As held in Heintz, Goldman, and set forth in text of the FDCPA (e.g. § 1962i),
the FDCPA was intended to cover court pleadings specifically, and litigation
conduct by debt collection law firms more generally.

Indeed, numerous districts courts in this Circuit, have applied the FDCPA to
conduct occurring in the course of state court litigation.  Sykes v. Mel S. Harris,
757 F. Supp. 2d. 413, 428-429 (S.D.N.Y.  2010); Bowens v. LR Credit 10, LLC,
2011 U.S. Dist. LEXIS 143737, *14 (W.D.N.Y. Dec. 5, 2011); Miller v. Upton,
Cohen & Slamowitz, 687 F. Supp. 2d 86, 91 (E.D.N.Y. 2009); Diaz v. Portfolio
Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 72724, 12-16 (E.D.N.Y. May 23,
2012).

Numerous cases from outside this jurisdiction have likewise found that state
court litigation activity is subject to the FDCPA.   See, e.g. Gearing v. Check

---

[2] Although Goldman is no longer the law with regard to the requirements specific to initial
communications under § 1692g, due to Congress's amendment of the FDCPA, Goldman remains
the law of the Second Circuit, for the more general proposition that the state court pleadings are
"communications" which can, if false or deceptive, subject a collection attorney to liability under
the Act. See Diaz v. Portfolio Recovery Assocs., LLC, 2012 U.S. Dist. LEXIS 72724, 12-16
(E.D.N.Y. May 23, 2012) (discussing Goldman and so holding).

Brokerage Corp., 233 F.3d 469, 471 (7th Cir. Ill. 2000); Wallace v. Washington

Mut. Bank, F.A., 683 F.3d 323, 326-28 (6th Cir. June 26, 2012): Grdn v. Leiken,

Ingber & Winters, P.C., 643 F.3d 169 (6th Cir. 2011); McCollough v. Johnson,

Rodenburg & Lauinger, LLC, 637 F.3d 939 (9th Cir. 2011); See also, Midland

Funding LLC v. Brent,  644 F.Supp. 2d 961, (N.D. Ohio 2009).

### C. The Cases Relied Upon By The District Court To Exempt Defendants' Misconduct From Coverage Under The FDCPA Are Inapposite

The District Court's Order ignored all of the above and instead drew upon dicta

in two cases.

### 1. The *Kropelnicki* Dicta Is Inapposite

The District Court relied principally on dicta found in Kropelnicki v. Siegel,

290 F.3d 118 (2d Cir. 2002) for the proposition that Mr. DiMatteo's claims failed

because he had retained counsel. [3]  The Kropelnicki dicta, however, is not properly

understood to stand for any such broad proposition.  Rather, even if the dicta were

---

[3] The issue of whether Appellant's retention of counsel rendered Defendants' conduct non-actionable was, like many of the other issues addressed by the District Court, raised *sua sponte* by the District Court.  It should also be noted that Kropelnicki's central holding – that FDCPA claims are barred under the *Rooker-Feldman* doctrine where they are "inextricably intertwined with [a] state court default judgment and the motion to vacate it" has since been rejected by the Supreme Court, which has emphasized that the Rooker-Feldman doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon- Mobil Corp. v. Saudio Basic Indus. Corp., 544 US 280, 284 (2005).  See Mascoll v. Strumpf, 2006 U.S. Dist. LEXIS 69061, *8-9 (E.D.N.Y. Sept. 25, 2006)(in which the Court denied a motion to dismiss FDCPA claims against a collection attorney and, in doing so, noted that that Kropelnicki's "inextricably intertwined" standard, "was abrogated by the Supreme Court's decision in Exxon Mobil Corp[.]").

to be adopted, it stands for the unremarkable proposition that a communication directed solely to a consumer's attorney, and not to the consumer herself may not be actionable.

In Kropelnicki, the consumer alleged, *inter alia*, that the debt collector committed a deceptive act by stating during a phone call to the consumer's attorney that the collector would not file for judgment without contacting the consumer's attorney, and then nonetheless filing for judgment without contacting the consumer's attorney.

The Court stated in relevant part as follows:

> The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors. To effectuate this purpose, we review claims of FDCPA violations under the so-called least-sophisticated-consumer standard in order to: "(1) ensure[] the protection of all consumers, even the naive and the trusting, against deceptive debt collection practices, and (2) protect[] debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Accordingly, we find serious flaws in Kropelnicki's argument that a violation of the FDCPA occurs where a party alleges that his attorney has been misled to the party's detriment.* Where an attorney is interposed as an intermediary between a debt collector and a consumer, we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today.

Kropelnicki v. Siegel, 290 F.3d at 127-128 (emphasis added) (citations omitted).

Whatever the merit of a finding that statements allegedly made on a phone call between counsel cannot be the basis of an FDCPA complaint, it is a far cry from a

general proposition that otherwise actionable false statements made to a consumer and/or a state court are rendered permissible whenever the consumer in question has hired a lawyer.

The issue of Kropelnicki's scope was adeptly analyzed in <u>Wright v. Phillips & Cohen Assocs.</u>, 2014 U.S. Dist. LEXIS 126804 (E.D.N.Y. Sept. 9, 2014), in which the Court found statements made in a letter addressed to a consumer "care of" the consumer's attorney to be actionable:

> Initially, Defendant argues that the Court should dismiss Plaintiff's claims because Defendant addressed the letter to Plaintiff's attorney and "communications between a debt collector and an attorney for the consumer are not actionable under the FDCPA." "Where an attorney is interposed as an intermediary between a debt collector and a consumer, [the Court] assume[s] the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior."  <u>Kropelnicki</u>, 290 F.3d at 128, 290 F.3d at 128. In the instant case, Defendant argues that the July 6, 2012 letter is not actionable under the FDCPA, "as it contains no threat to contact the consumer and was directed solely to Plaintiff's attorney." Therefore, the Court will first determine whether the July 6, 2012 letter about which Plaintiff complains was directed to Plaintiff, a consumer protected under the FDCPA, or Plaintiff's attorneys.

> Under the FDCPA, a "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). In cases where an attorney was found to have been interposed as an intermediary between a debt collector and a consumer, courts have noted that the communication in question was directed "solely to the debtor's attorney" and "contain[ed] no threat of forwarding the communication to the debtor [him]self[citation omitted].  Here, in contrast, Defendant addressed the July 6, 2012 letter to "ERROL WRIGHT C/O FAGENSON & PUGLISI," the salutation portion of the letter addresses Errol Wright directly, and Plaintiff's attorneys are not

22

referred to in any capacity throughout the body of the letter. Although the July 6, 2012 letter arrived at the address of Fagenson & Puglisi, it is clear that the information it contained was designed to be conveyed, albeit "indirectly," to Plaintiff. 15 U.S.C. § 1692a(2). Therefore, the July 6, 2012 letter constituted "the initial communication with a consumer in connection with the collection of [his] debt." 15 U.S.C. § 1692g(a).

Id. at *9-10 (citations to record omitted).

This understanding of Kropelnicki was likewise adopted in Tromba v. M.R.S. Assocs., 323 F. Supp. 2d 424, 428 (E.D.N.Y. 2004) ("[I]n reliance upon Kropelnicki, the Court concludes that, under the circumstances alleged in this case, Plaintiff has no cause of action under the FDCPA *where a communication was solely directed to her attorney* and no threat was made regarding contact with the debtor herself.") (emphasis added).

Indeed, this distinction between communications "solely directed at a debtor's attorney or another third party" (not covered under the FDCPA) and those directed at the consumer (covered under the FDCPA) was recently applied in the landlord tenant context in Setton v. Cohen Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP, 2014 U.S. Dist. LEXIS 133772, 12-14 (E.D.N.Y. Sept. 22, 2014), where the Court held that a represented consumer who received an allegedly deceptive eviction notice could  proceed despite the fact that the consumer was represented by counsel at the time of receipt because the notice was sent to the consumer not the attorney.  The Court

23

distinguished "various cases involving communications solely directed at a debtor's attorney or another third party".[4]

In the case at bar, there can be no question that any of the communications in question were "solely directed at debtor's attorney". To wit, both the rent demand and the Summons and Complaint were, on their face, directed to Appellant and both were served upon him. Indeed, all the misleading and false representations in both the Rent Demand and in the petition initiating the action were made directly to Mr. DiMatteo, not to his attorney.

As such, both are a far cry from the situation addressed in Kropelnicki, and both fall outside the scope of the dicta relied upon by the District Court.

---

[4] Other courts have limited application of the Kropelnicki dicta on other grounds, as well. For instance, in Lemire v. Wolpoff & Abramson. LLP, 256 F.R.D. 321 (D. Conn. 2009), the court reasoned as follows:

> The Second Circuit's observation in Kropelnicki that attorneys can protect their clients from "fraudulent or harassing" behavior does not affect this conclusion, for two reasons. First, the claim that Lemire has raised need not be based on "fraudulent or harassing" behavior, since the statute also prohibits behavior which is merely "deceptive" or "unfair or unconscionable," and indeed, those were precisely the grounds on which this Court found FDCPA violations in Gaetano. 774 F. Supp. at 1415 & n.8. Second, the Court of Appeals specifically disclaimed its own observation as dicta, saying it was "not an issue on which we need to rule today." 290 F.3d at 128.

Id. at 326.

Appellant does not, however, mean to suggest that the case law is entirely even. Several other lower courts have misapplied the Kropelnicki dicta in the same manner as the District Court in the case at bar, expanding its scope to bar FDCPA claims based on state court litigation misconduct on grounds that the consumer was represented at the time, more generally. See, e.g. Pellechia v. OneWest Bank, FSB, 2013 U.S. Dist. LEXIS 36718 (D. Conn. Mar. 18, 2013), citing Walsh v. Law Offices of Howard Lee Schiff, P.C., 2012 U.S. Dist. LEXIS 136408, *5 (D. Conn. Sept. 24, 2012)

In any event, although this Court need not reach the issue in the case at bar, several sister circuits have held that FDCPA is applicable to communications directed to a consumer's counsel. Sayyed v. Wolpoff & Abramson, 485 F.3d 226 (4th Cir. 2007) ("communications with a debtor's attorney with regard to the debt are 'communications' as defined and regulated by the FDCPA . . .If the statute left any room for doubt about this issue, Heintz[5] resolved it. . . . Thus, plainly, the FDCPA covers communications to a debtor's attorney"); Allen ex Rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011) cert. denied, 132 S. Ct. 1141, 181 L. Ed. 2d 1016 (U.S. 2012), holding that communications directed to an attorney are actionable because "[a] communication to a consumer's attorney is undoubtedly an indirect communication to the consumer" ); Dikeman v. National Educators, 81 F.3d 949 (10th Cir. 1996)("We also emphasize that the alleged deceptive practice in this case was not a misleading representation but an omission to include a verbal warning under a statute that requires the debt collector to 'disclose' something. We are not holding here that an affirmative misrepresentation to a lawyer would be excusable merely because a lawyer could see through the false statement."). But see, Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 936-938 (9th Cir. 2007) (disagreeing with the 4th Circuit's ruling in

---

[5] Although it did not explicitly decide the issue, the Supreme Court, in Heintz v. Jenkins, supra, 514 U.S. 291 found that a communication from a collection lawyer to a consumer's attorney was actionable under the FDCPA because it misstated the consumer's rights under federal law. 514 U.S. at 293-294.

Sayyed, and holding in a 2-1 decision that communications "can include efforts directed exclusively to a debtor's attorney, but not at the debtor himself" were not covered under § 1692e); See also, Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007) (J. Posner) (holding that the FDCPA applies to communications that must, pursuant to the FDCPA, be sent by the debt collector to the consumer's attorney rather than the consumer, but that a heightened standard applies except where the statement at issue is alleged to be false)

2.  The *Gabriele* (Summary Order) Footnote Dicta Is Inapposite and Incorrect

The District Court also cited this Court's Summary Order in Gabriele v. Am. Home Mortg. Servicing, 503 Fed. Appx. 89 (2d Cir. 2012) for the proposition that "the protective purposes of the FDCPA typically are not implicated 'when a debtor is instead protected by the court system and its officers," Order at p. 5, A-98, citing Gabriele at 96.

Gabriele is distinguishable in several respects and, in any event, the above quoted language, which is dicta appearing in the footnote of a summary order, is contrary to law.

Gabriele was a post-foreclosure FDCPA action brought against the law firm representing the plaintiffs in the state court action. After losing the foreclosure case, Gabriele complained in the subsequent FDCPA action that:

26

> Croog [The bank's attorney]'s affirmation in the state complaint that it would serve copies of exhibits on Gabriele, and the filing of a notice of compliance with that requirement, when, according to Gabriele, Croog's never forwarded an exhibit; Croog's filing of two motions for default when Gabriele was allegedly not in default; Croog's premature filing of a motion for judgment of strict foreclosure in violation of a procedural rule".

Gabriele, at 92.

Gabriele also alleged that the bank's attorney, had filed one affidavit that was false *in that it was unsigned*, another that stated that "Gabriele was ineligible for a federal loss mitigation program when in fact he was under consideration for such a program in mediation", and another stating that "there were no set-offs or counterclaims" when, the consumer, through his attorney, had filed counterclaims several months prior.

After finding that the *Rooker-Feldman* doctrine did not apply, the Court noted that "[o]ur case law demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA". Id. at 94.

The Court then reached its holding, noting the FDCPA's application to litigation conduct, emphasizing the entirely procedural and thus immaterial nature of the alleged misconduct:

> Although statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the

27

> FDCPA, the false statements of which Gabriele complains do not amount to the kind of misleading and deceptive practices that fall within the ambit of the FDCPA, and therefore fail to state a plausible claim. Gabriele alleges that Croog prematurely filed two motions for default and a motion for judgment of strict foreclosure, in violation of procedural rules and deadlines set by the court, thereby forcing Gabriele to "expend unnecessary resources" defending against those motions. But the FDCPA does not guarantee consumers an efficient or thrifty resolution of their putative debt, nor would the filing of three untimely motions interfere with a consumer's ability to answer and defend himself.

Id. at 95 (citations omitted).[6]  The District Court below likewise relied upon Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 518 (S.D.N.Y. 2013) which, citing Gabriele, held that a collection attorney's failure to file a notice of appearance was not actionable, particularly because the attorney had, in fact, appeared in the action and been in communication with the debtor.  In the District Court's view, the false allegation that Appellant's relationship with Sullivan was governed by a written lease was similarly "immaterial".  Order at p. 7, n.3, A-100.

Appellant, however, is not complaining about arguably immaterial procedural errors of the type addressed in Gabriele and Okyere, but about the very fundament of what the Defendants did: starting an eviction action when all the rent had been tendered; misrepresenting the action as one involving garden-variety non-payment; seeking legal fees pursuant to a contract that did not exist, etc..  Indeed, even apart

---

[6] The Gabriele Court also noted that Gabriele was represented by counsel during the state court proceeding as a factor mitigating against FDCPA liability, citing Kropelnicki.  Gabriele at 95. To the extent this represents a broader reading of the Kropelnicki dicta than suggested by Appellant herein, Appellant respectfully suggests that the summary order is incorrect.

from the question of legal fees, whether a written contract exists is obviously material, as it determines the rights of the parties.

Thus, <u>Gabriele</u> and <u>Okyere</u> are indistinguishable from the plethora of cases involving wrongfully brought state court litigation and/or material misrepresentations made in state court pleadings in which Courts have found FDCPA liability. In this regard, it is notable that the <u>Gabriele</u> Court favorably cites <u>Sykes v. Mel S. Harris</u>, 757 F. Supp. 2d. 413, 424 (S.D.N.Y. 2010), describing the case as "denying motion to dismiss FDCPA claim alleging that defendant law firm engaged in scheme to default debtors through the filing of affidavits falsely attesting that debtors had been served with complaints in debt collection suits". <u>Gabriele</u> at 94-95.

Three cases from sister circuits are particularly apt: In <u>Gearing v. Check Brokerage Corp.</u>, 233 F.3d 469 (7th Cir. Ill. 2000), the Seventh Circuit upheld summary judgment for a consumer who alleged that a debt collector falsely represented in a state court consumer collection action that it was the subrogee of the original creditor, stating:

> Check Brokerage's allegation in its state court complaint that it was "subrogated" to Ayerco's rights gave a false impression as to the legal status it enjoyed. The representation was, as the district court found, a false representation in an attempt to collect the debt, in violation of 15 U.S.C. § 1692e(2) and (10). Section 1692e applies even when a false representation was unintentional.

<u>Id</u>. at 472.

29

In <u>Wallace v. Washington Mut. Bank, F.A.</u>, 683 F.3d 323 (6th Cir. 2012), the consumer sued a debt collection law firm for misrepresenting in a state court foreclosure complaint that it's client Washington Mutual, had standing to sue. The 6th Circuit reversed the lower court's dismissal and reinstated the action, finding that the consumer had stated a plausible claim under § 1692e(2)(A) (prohibiting "[t]he false representation of. . . the character, amount or legal status of any debt") and § 1692e10 (prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.), violation of which has also been alleged by Appellant in the instant case. Complaint at ¶ 39, A-11

In <u>McCollough v. Johnson, Rodenburg & Lauinger, LLC</u>, 637 F.3d 939 (9th Cir. 2011), a consumer brought suit under the FDCPA alleging that a state court lawsuit had been wrongfully brought outside the statute of limitations and that a notice to admit served upon the consumer was actionable because it asked the consumer to admit facts that the debt collector knew to be false (specifically, that the consumer had never disputed the debt, that there were no facts upon which the consumer relied as a basis for his state court defense, that the allegations in the state court complaint were true, and that the consumer had made a partial payment that he hadn't made). The consumer "retained counsel and timely denied all of the requests" for admission. <u>Id</u>. at 946. The consumer, as here, also alleged that the

collection law firm had violated the FDCPA by seeking attorney's fees in the state court action when there was no basis for same.

The consumer prevailed at summary judgment on these claims and was awarded significant damages after a jury trial. The collection law firm then appealed the award of summary judgment.

A 9th Circuit panel including Justice Sandra Day O'Connor (ret.) sitting by special designation, upheld the grant of summary judgment for the consumer on each of the above-stated claims. With regard to the allegation that the debt collector sought attorney's fees in the state action, the Court held:

> The district court correctly concluded that JRL failed to meet its burden to show a genuine issue for trial because it presented no admissible evidence of a contract authorizing a fee award. The FDCPA prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). JRL produced no evidence of express authorization of its fee request from McCollough; the presentation of generic evidence that all credit cards contain attorney's fees provisions was insufficient to create a genuine issue of material fact for the jury. The district court correctly granted summary judgment on the claim.

Id. at 950.

In the case at bar, the FDCPA liability re attorney's fees is even clearer than in McCullough, as Defendants have not identified even the sort of "generic evidence" the McCollough Court found inadequate.

Three recent district court cases from this Circuit are also informative:

31

In <u>Lee v. Kucker & Bruh, LLP</u>, 958 F. Supp. 2d 524, 528-529 (S.D.N.Y. 2013), the consumer tenant alleged, as here, that a debt collection law firm wrongfully commenced a summary eviction proceeding against him when he was not delinquent. The Court denied the collection law firm's motion to dismiss, stating:

> This Court holds that the misrepresentation in the Three Day Notice, the Verification and the Petition for summary nonpayment eviction of a debt supposedly owed by Mr. Lee for rent and fuel charges, when in fact he was current on his payments, is a violation of § 1692e(2)(A).

<u>Id</u>. at 529.

In <u>Travieso v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.</u> 1995 U.S. Dist. LEXIS 17804 (E.D.N.Y. Nov. 16, 1995), the very same allegations made in this complaint were found sufficient to defeat a motion to dismiss in ("Plaintiffs allege that defendants, as a practice, make rent demands and other charges in excess of that permitted by . . . law, charge tenants unauthorized fees, and commence unlawful eviction proceedings in the New York City Housing Court to collect rent not actually due. . . . As a result of defendants' practices, plaintiffs allege that they are forced to appear . . . in New York City Housing Court to defend baseless claims").

And finally, in <u>Diaz v. Portfolio Recovery Assocs., LLC</u>, 2012 U.S. Dist. LEXIS 72724, 12 (E.D.N.Y. May 23, 2012), the Court denied dismissal of an FDCPA claim that a state court collection action was wrongfully brought outside the statute of limitations. In doing so, the Court explicitly held that the "litigation

pleadings" *i.e.* the state court collection complaint, were "'communications' under the FDCPA".

To the extent that the District Court intended to rule that false representations regarding whether the consumer is indebted or the amount of the indebtedness are immaterial because they do not necessarily "influence a consumer's decision or ability to pay or challenge a debt" Order at p. 4, A-97 (quoting Okyere, 961 F. Supp. 2d. at 518) the Court erred in two regards.

First, although Mr. DiMatteo may not have been fooled, a collection attorney's representation that one owes money, including attorney's fees, that one does not owe is certainly a representation that could "influence" the hypothetical least sophisticated consumer's "decision. . . to pay or challenge a debt." Indeed, that is its primary purpose.

More broadly however, the language from Okyere cited by the District Court should not be understood to be an exhaustive list of the types of claims that are material. Misrepresentations as to whether the consumer is indebted and for how much lie at the very heart of the FDCPA. See, e.g. § 1692f(1) (listing as the first example of unfair conduct barred by the FDCPA "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."); see also, §1692e(2)(A) (barring "[t]he false

33

representation of. . .the character, amount, or legal status of any debt");
1692e(10)(barring "[t]he use of any false representation or deceptive means to
collect or attempt to collect any debt or to obtain information concerning a
consumer."). See also, Gabriele at 94-5 ("Our case law demonstrates that
communications and practices that *could mislead a putative-debtor as to the nature
and legal status of the underlying debt*, or that could impede a consumer's ability to
respond to or dispute collection, violate the FDCPA."). Misstatements as to
whether the consumer is liable for a debt and, if so, for how much, are material
primarily because if they are believed by the consumer or the state court to which
they are submitted, the debt collector prevails, *i.e.* they are material because they
are dispositive if accepted as true.

This is perhaps the crucial distinction between the types of purely procedural
state court misrepresentations that federal courts have held as insufficient to sustain
an FDCPA claim, and the more substantive state court misrepresentations that
federal courts have held may form the basis of liability under § 1692e and §1692f.

The District Court's reliance on Gabriele, however, appears not to be based
on any similarity between the facts of the two cases nor any determination that the
misrepresentations in question were purely procedural rather than tracking with the
numerous cases that have upheld FDCPA claims based on a claim that the

collection suit was wrongfully brought or that the pleadings in the suit contained

substantive misrepresentations.

Rather, the District Court appears to have relied on broader dicta found in a

footnote.  To wit, the Gabriele Court stated as follows:

> As we have recognized in past decisions, the protective purposes of
> the FDCPA typically are not implicated "when a debtor is instead
> protected by the court system and its officers." Simmons v. Roundup
> Funding, LLC, 622 F.3d 93, 96 (2d Cir. 2010) (holding that inflated
> proof of claim in bankruptcy court cannot form basis of FDCPA
> action). In Connecticut, "the state foreclosure process is highly
> regulated and court controlled." Derisme v. Hunt Leibert Jacobson
> P.C., No. 10 Civ. 23, 2012 U.S. Dist. LEXIS 101922, 2012 WL
> 3000386, at *16 (D. Conn. July 23, 2012). When that is the case, the
> state court's authority to discipline will usually be sufficient to protect
> putative-debtors like Gabriele from legitimately abusive or harassing
> litigation conduct. But see Sykes, 757 F. Supp. 2d at 423-24.

Gabriele, at 96, n.1.

Even assuming there had been a finding in the instant case that New York's

landlord tenant eviction proceeding is "highly regulated and court controlled" and

thus comparable to the process at issue in Derisme and Gabriele, Gabriele is

simply incorrect and not the law.   For, as already discussed above, the creation of

a state court litigation exemption does not depend upon how highly regulated the

particular type of state court action is, nor upon whether such an exemption would

have an articulable policy basis. [7]

---

[7] It should be noted that the issue addressed in Simmons v. Roundup Funding, LLC, 622 F.3d 93
(2nd Cir. 2010) cited in Gabriele is fundamentally different than the issue in the case at bar.  In

As analyzed above, and as held in <u>Heintz</u>, <u>Goldman</u>, and as set forth in text of the FDCPA, itself (e.g. § 1962i), the FDCPA was precisely intended to cover court pleadings specifically, and litigation conduct by debt collection law firms more generally.

The broader, purported "state court litigation exception" is thus merely a policy argument that runs directly contrary to Supreme Court precedent holding that the FDCPA applies to collection attorneys engaged in litigation activities, as well as the text of the statute. See <u>Heintz</u>, at 296, noting that "alternative language designed to keep litigation activities outside the Act's scope" was proposed "but that language was not enacted."[8]

As such, it is simply unavailable, for "when Congress's intent in passing the statute is clear from the text of a statute or its legislative history, courts must ignore policy arguments about how to apply the statute because "the proper venue for resolving that [policy] issue remains the floor of Congress." <u>Escambia County Utilities Authority v. Amerada Hess Corp. (In re Methyl Tertiary Butyl Ether</u>

_____

<u>Simmons</u>, the Court addressed the relationship of two federal statutes, *i.e.* the FDCPA and the Bankruptcy Code, and whether Congress, in passing the bankruptcy laws, intended to provide debtors with an exclusive set of remedies. The Court held that, at least for certain types of violations of the Bankruptcy code such as defective proofs of claim, the consumer's only remedy was the Bankruptcy "Code's remedial scheme". Critically, the Court held that "nothing in the FDCPA suggests that it is intended as an overlay to the protections already in place in the bankruptcy proceedings." <u>Id</u>. at 96.

[8] A litigation exemption was proposed again in the U.S. House of Representatives in late 2012 as H.R. 6706, but did not get out of committee. A substantially similar bill was submitted in 2013 as H.R. 2892. It has not been adopted.

Prods. Liab. Litig.), 2005 U.S. Dist. LEXIS 753 (S.D.N.Y. Jan. 18, 2005)(quoting

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 40 (U.S.

1998).

The "state court litigation exemption" is also directly contradicted by the

statute's Congressional findings and declaration of purpose, which states that

"[e]xisting laws and procedures for redressing these injuries are inadequate to

protect consumers".  15 U.S.C. § 1692(b).

Notably, the FDCPA does provide a careful, fact-driven regulatory procedure

by which a state whose own laws (including its own state court procedural

protections) provide the same or a superior level of protection at no greater cost to

them both in law and in practice may seek and receive an exemption from the

FDCPA pursuant to § 1692o.  See also, 16 C.F.R. § 901.4.

Pursuant to § 1692o, the Consumer Financial Protection Bureau ("CFPB")[9] has

the power to exempt "any class of debt collection practices within any State if the

Bureau determines that under the law of that State that class of debt collection

practices is subject to requirements substantially similar to those imposed by this

subchapter, *and that there is adequate provision for enforcement*." (emphasis

added).

---

[9] Previously, the Federal Trade Commission was the FDCPA's primary regulator.

The relevant implementing regulations set forth a stringent application process, under which a State must demonstrate not only that "[d]ebt Collectors take all affirmative actions and abide by obligations substantially similar to, or more extensive than, those prescribed by [the FDCPA], and that "[d]ebt Collectors abide by the same or more stringent prohibitions as are prescribed", but also that *"[o]bligations or responsibilities imposed on consumers are no more costly, lengthy, or burdensome relative to consumers exercising any of the rights or gaining the benefits of the protections provided in the State law than corresponding obligations or responsibilities imposed on consumers [under the FDCPA]."* 16 C.F.R. § 901.4 (emphasis added).

Likewise, the CFPB is required to consider "the extent to which, under State law, provision is made for administrative enforcement*, including necessary facilities, personnel, and funding.*" Id. (emphasis added).

Put differently, the text of the FDCPA specifically contemplates that a state may have significant, overlapping laws and specifically provides a route for exemption from the statute on this ground, but only to the extent that there is a finding by the federal regulator that those protections, are equal to or more stringent than set forth under the FDCPA; that they exist in law and in fact; and that exercise of the rights contained under the FDCPA (a strict liability, fee shifting

statute) will not be more costly or difficult for the consumer to assert under the state's alternate regime.

In suggesting that unfair and deceptive acts occurring in the context of state court litigation were generally outside the scope of the FDCPA, the District Court below ignored the careful, thorough and detailed regulatory consideration of the adequacy, in theory and in fact, of state court remedies required under 1692o and its implementing regulations, and replaced it with a sweeping generality, creating a sizeable exemption in FDCPA coverage impacting hundreds of thousands of New York consumers each year who would otherwise be subject to FDCPA protections.

New York has not chosen to attempt to opt out of the FDCPA, nor has the CFPB made the necessary findings that would permit same pursuant to § 1692o. The District Court was not at liberty, contrary to the exemption scheme set forth in the statute, to play the role of both the State and the federal regulator, and exempt New York state court collection proceedings from the FDCPA by judicial fiat based on its own assessment of the degree of protection provided by state law.

### D. The Court Below Erred By Departing From The Well Established "Hypothetical Least Sophisticated Consumer" Standard

In dismissing the case, the District Court held that Mr. DiMatteo was "well aware of . . . the basis for the summary proceeding." Order at p. 6, A-99. For this reason, the District Court held that the misstatements found in the Rent Demand and in the Complaint were merely "technically false" and permissible, citing to

<u>Gabriele's</u> statement. See Order at p. 7, A-100 (stating that no FDCPA liability attached both because of "DiMatteo's own knowledge of what was going on" and because Appellant "was represented by counsel".)

However, whether or not the individual consumer in question – with all his or her knowledge of the history of the dispute between the parties and/or with the benefit of counsel -- was or was not misled does not convert otherwise actionable (and blatant) falsehoods into hyper-technicalities.

Specifically, it is well established that whether a collection communication to a consumer is deceptive is to be judged under an objective standard involving the "hypothetical least sophisticated consumer" and does not require reliance.

"This hypothetical least sophisticated consumer does not have 'the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer,' but is neither irrational nor a dolt." <u>Ellis v. Solomon & Solomon, P.C.</u>, 591 F.3d 130, 135 (2d Cir. Conn. 2010), quoting

> <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 34 (2d Cir. N.Y. 1996).In adopting the objective, least sophisticated consumer standard in <u>Clomon v. Jackson</u>, 988 F.2d 1314, 1318-1319 (2d Cir. 1993), the Court further stated: More than fifty years ago, the Supreme Court noted that the fact that a false may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

<u>Id</u>. at 1318-1319.

40

Thus, it is well established that in determining whether, for example, language before or after a collection letter's required FDCPA initial disclosure "overshadows" or is "inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor" pursuant to § 1692g(b), the Court does not inquire into whether the plaintiff consumer was, because of his or her background knowledge, training, knowledge of the dispute with a particular creditor, etc. actually or reasonably confused, but rather whether a hypothetical least sophisticated consumer without any of the plaintiff's particulars would reasonably be confused by the statements found in the dunning notice. See, e.g. Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.3d 360, 365 (2d Cir. 2005); Clomon v. Jackson, 988 F.2d at 1318-1321; Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 90-95 (2d Cir. N.Y. 2008).[10]

As applied to the instant case, this standard cannot plausibly justify dismissal of Appellant's claims. Specifically, just as the it would be reversible error to inquire into whether the recipient of an initial communication was, because of factors specific to that individual, actually or reasonably confused by potentially "overshadowing" verbiage under 1692g(b), it is equally impermissible to inquire as to whether a consumer who receives an otherwise actionable and deceptive

---

[10] It should be noted that the District Court addressed the least sophisticated consumer standard's application to Plaintiff's claims *sua sponte*. To wit, Defendants did not contend that the standard wasn't met, nor reference it in any way below.

demand for attorney's fees was, because of factors specific to that individual, actually or reasonably misled into believing the attorney's fees were owed.

To hold otherwise is inconsistent with this Court's binding precedents and would constitute, for all practical purposes, the abandonment of the least sophisticated consumer standard.

It is certainly true that the least sophisticated consumer standard, while protecting the "gullible as well as the shrewd" does not give license to "bizzare or idiosyncratic interpretations" of a debt collector's communications with a consumer. <u>Maguire v. Citicorp Retail Servs.</u>, 147 F.3d 232, 236 (2d Cir. 1998) quoting <u>Clomon</u> at 1318-20.

Appellant's claims, however, do not rely on a bizarre or idiosyncratic interpretation of either the Rent Demand or the Petition. For example, the latter flatly states that the creditor is entitled to attorney's fees when it is undisputed that this is not the case. Nor can there be any question but in drafting the Petition, Defendants -- through both misstatement and material omission -- falsely gave the impression that the dispute between Appellant and Sullivan was one involving simple non-payment appropriately addressed in a summary eviction proceeding, rather than a case in where the tenant, through a co-occupant had tendered all rent and the landlord had rejected same and nonetheless sought to evict the tenant and his co-occupant.

42

Moreover, the least sophisticated consumer standard has no relevance with regard to Appellant's claim that the commencement of the eviction action and the various misstatements and omissions in the Petition were attempts to provide the state court (rather than the consumer) with false information.

Specifically, the FDCPA does not only prohibit false communications to the consumer, but also "false, deceptive, or misleading representation or means in connection with the collection of any debt" (1692e), including inter alia, "the use of any false representation or deceptive means to collect or attempt to collect any debt[.]."

Thus, for instance, District Courts in this jurisdiction have repeatedly held that false information submitted to state courts in the course of consumer collection actions violates the FDCPA. See, e.g. Coble v. Cohen & Slamowitz, LLP, 824 F. Supp. 2d 568, 569-570 (S.D.N.Y. 2011) (denying motion to dismiss in FDCPA class action involving allegation that collection attorney knew affidavits of service filed in state courts, stating "Plaintiffs plausibly allege defendants violated the FDCPA when they applied for default judgments against plaintiffs"; and further holding that plaintiffs " plausibly alleged that by failing to investigate the fraudulent practices of its process service company and continuing to enforce those judgments, defendants violated the FDCPA."; Sykes v. Mel S. Harris, 757 F. Supp. 2d. at 428-429 (J. Chin) (collecting cases and denying motion to dismiss FDCPA

claims and certifying class where plaintiffs alleged that collection attorneys and

other debt collectors engaged in a pattern of submitting falsified affidavits of

service and seeking default judgments based on same); <u>Miller v. Upton, Cohen &

Slamowitz</u>, 687 F.Supp.2d 86, 102 ("Miller III") (finding FDCPA liability under

1692e(5) after bench trial where evidence supported "conclusion that . . . litigation

documents were regularly mass-produced by non-lawyers at the push of a button"

and without meaningful attorney review); <u>Diaz v. Portfolio Recovery Assocs.</u>,

LLC, 2012 U.S. Dist. LEXIS 72724, 12-16 (E.D.N.Y. May 23, 2012) (holding that

a state court collection complaint was a "communication" under the FDCPA after

lengthy analysis and finding that "Plaintiff stated a claim under Sections 1692e and

1692f by alleging that Defendant filed a complaint to collect a time-barred debt

without meaningfully reviewing the complaint and that Defendant took legal action

when it knew there was no factual basis for such action.")

Finally, bringing a summary eviction proceeding in state court under the

circumstances at issue here is -- even if somehow deemed not deceptive –certainly

unfair, in violation of § 1692f. Complaint at ¶ 39, A-11.

Summary proceedings were created by the New York legislature as an

extremely rapid means of allowing property owners to recover their property when

tenants cease paying rent. The Defendants herein, in representing Mr. DiMatteo's

landlord, commenced a summary eviction proceeding under Article 7 of New

York's Real Property Actions and Proceedings Law ("RPAPL") and Article 4 of New York's Civil Practice Law and Rules ("CPLR"), alleging rent arrears and non-payment of rent.

Tenants have meager procedural protections in a summary eviction proceeding in Housing Court, in contrast to those provided for in a plenary state court action in either Civil or Supreme Court:

• In a plenary action under the CPLR, a defendant/debtor is given 20 or 30 days to answer, depending upon the method of service utilized; in a summary non-payment proceeding under the RPAPL and under local rules in New York City, the respondent/tenant has just 5 days to answer, and he fails to do so, the petitioner landlord may obtain a default judgment of possession and a warrant of eviction; in another six days, a City Marshal can then execute on that warrant and perform a full eviction.

• In a plenary action, a defendant/debtor has the full panoply of discovery devices at his disposal in developing his defense; in a summary non-payment proceeding, discovery is forbidden, except by leave of court, which is rarely granted;

• In a plenary action, trial occurs months or even years after issue is joined; in a summary non-payment proceeding, trials are to be scheduled within 30 days.

45

A summary proceeding is meant to give a property owner swift relief where the owner is continuing to provide lodging but the tenant is no longer tendering rent. See Columbus Prop. v. I S K S Realty Corp., 163 Misc. 2d 446 (N.Y. Civ. Ct. 1994)(" A summary proceeding is a statutory construct in derogation of the common law. . . . It is intended to provide a streamlined, expeditious means of recovering possession of real property. Because the petitioner obtains the benefit of an expedited and simplified procedure which bypasses many of the usual procedural steps of a plenary action, petitioner must prove strict compliance with all of the requirements for a summary proceeding"); New York v. Betancourt, 79 Misc. 2d 907 (App. Term, 1st Dept 1974); Poulakas v. Ortiz, 25 Misc. 3d 717, 724-725 (Civ. Ct., N.Y. Co. 2009); Great Park Corp. v Goldberger, 41 Misc 2d 988, 989 (Civ Ct, NY Co. 1964) ("The primary purpose and intention of summary proceedings is the speedy and expeditious disposition of the issue as to the right of the landlord to the immediate possession of his real property.")

Not only was Mr. DiMatteo denied the usual process due a litigant—he was threatened with summary eviction—the loss of his home of more than four decades. Had Mr. DiMatteo and Mr. Hirko embarked on a three week vacation, they could have returned to find themselves homeless, with new tenants occupying their apartment.

Using a summary eviction proceeding when rent has been tendered in order to wage a battle regarding future succession rights is an unacceptable method of skirting the procedural protections normally available to the consumer and, as such, constitutes an unfair practice under 1692f, separate and apart from Appellants claims under 1692e.

**E. The District Court Erred With Regard To Its Application of 1692g(b), Which Does Not Either Under The Facts Of This Case (Or More Generally) Trigger A Waiver Of A Consumer's Independent Claims Of Collection Misconduct**

The District Court erroneously held, *sua sponte*, that by failing to dispute the purported debt within 30 days of receiving the initial communication", Appellant waived his right to challenge the debt collectors' tactics and misrepresentations under the FDCPA, and was barred from lodging any subsequent challenge to the amount owed.  Order at p. 5-6, A-99-100, citing <u>Ellis</u>, 591 at 131-2, 135-7.

This holding is contrary both to the law and facts.  With regard to the latter, appears to be the result of the District Court having assumed facts not in evidence in a manner adverse to Appellant.

At the outset, it is important to note that the issue of whether Appellant responded within 30 days of the Rent Demand or had an obligation to do so, as well as the issue of what, if any, would have been the legal consequence of not doing so, were raised *sua sponte* by the District Court.  None of these issues were raised by Defendants or briefed by the parties.

47

Specifically, the District Court seems to have erroneously concluded on its own that the November 1, 2013 letter from Appellant's counsel to Defendants was the first time Appellant disputed the debt and that, as such, no dispute had been made within 30 days of Appellant's receipt of the Rent Demand.   Order at 5-6, A-98 to A-99.

Thus the instant case bears no factual relation to Ellis – relied upon by the District Court -- in which the consumer "acknowledge[d] that she received the letter and that she never disputed the debt."  *Ellis*, 591 F.3d at 132.

Moreover, even were this not so, the District Court misunderstood the significance of a consumer not responding to a 30-day notice is incorrect.

Where a consumer disputes the debt within 30 days of receiving the initial notice the debt collector must "cease collection of the debt, or any disputed portion thereof" until verification of the debt is provided.  § 1692g(b).  See *Ellis* at 134-135. In contrast, there is no such obligation imposed under § 1692g where the consumer opts not to respond to the initial communication within 30 days.   As this Court has stated, "the validation period "is not a 'grace period'; in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." Jacobson, 516 F.3d at 89.

This does not mean – as the District Court seems to have erroneously concluded -- that a consumer waives any FDCPA claims with regard to subsequent

48

collection misconduct or is deemed to have admitted that he or she owes the obligation stated in the initial dunning letter, that the balance stated therein is correct, etc. It merely means that a debt collector's obligation under § 1692g(b) to cease all collection actions (including otherwise lawful collection actions on debts duly owed) until the debt is validated does not kick unless and until the debt is timely disputed. See, generally, Hooks v. Forman, Holt, Eliades & Ravin, LLC, 717 F.3d 282, 285-286 (2d Cir. N.Y. 2013) (describing which obligations are triggered by a consumer's written vs. oral dispute).

Indeed, § 1692g(c) explicitly states that "[t]he failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer", and courts have held that an initial communication that "gives the false impression that failure to respond within 30 days operates as a waiver of rights under the law. . . violates" the FDCPA. Diamond v. Corcoran, 1992 U.S. Dist. LEXIS 22793 (W.D. Mich. Aug. 3, 1992) (finding that a dunning letter that gave such a false impression violated § 1692e(10)).

Thus, even if there were a failure to dispute the validity of the debt under § 1692g, it would not render otherwise deceptive or unfair conduct lawful.

Put differently, the District Court errs because Appellant does not complain that Defendants' filing of the eviction proceeding was prohibited as a collection

action taken during the 30-day verification period, nor does he complain of any other violation related to Defendants' obligations under § 1692g(b). Rather Appellant claims that the Rent Demand, commencement of the eviction proceeding, and the statements in the Petition regarding rent owed, attorney's fees, etc. misleading and unfair in violation of various provisions of § 1692e and § 1692f.

In this context, whether an initial notice was provided, the contents of the disclosure, issues of "overshadowing", and whether the debt was disputed within a timeframe that triggered any obligations under 1692g are all irrelevant.

The District Court's assumption that Appellant failed to dispute Defendants' Rent Demand within 30 days, as well as the significance the District Court attached to any such failure constitutes reversible error.

## F. The District Court Erred In Finding That Commencement Of A Summary Eviction Proceeding Was Justified Under New York Law

The District Court further erred in finding that the initiation of a non-payment action and the Defendants' statements made in the Rent Demand and Petition under the facts of the instant case was warranted. The District Court found that because Sullivan feared creating a tenancy by waiver if it accepted rent checks from Mr. Hirko, "the landlord's position was understandable and appropriate." Order at p. The district Court relied upon Park Holding Co. v. Power, 61 A.D.2d 143 (1st Dep't 1990), a case that was decided prior to the adoption of New York's

current roommate law[11], and has not been the law in the First Department since at least 1992 with the decision in <u>Finkelstein v. Mutual Redevelopement Houses, Inc.</u>, 186 A.D.2d 90 (1st Dep't 1992). In <u>Finkelstein</u>, a granddaughter sought to remain in her deceased grandfather's Mitchell Lama cooperative apartment, despite provisions in the cooperative's bylaws forbidding such succession. The granddaughter argued that the cooperative's previous acceptance of her rent worked as a waiver of the cooperative's right to reject her tenancy. The Appellate Division ruled against the would-be tenant, stating "None of these restrictions were waived by respondent's acceptance of rent checks from the granddaughter during decedent's lifetime, since decedent, as tenant, was entitled to have an occupant on the premises").

There is abundant case law which has found that coverage under a rent regulatory scheme is governed by statute and cannot be created by waiver or estoppel. <u>Ruiz v. Chwatt Assocs</u>., 247 A.D.2d 308 ( 1st Dep't 1998); <u>Gregory v. Colonial DPC Corp. III</u>, 234 A.D.2d 419 (2d Dep't 1996)(citing cases); <u>Williams v.

_____

[11] Real Property Law § 235-f states in relevant part that "It shall be unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family. Any such restriction in a lease or rental agreement entered into or renewed before or after the effective date of this section shall be unenforceable as against public policy. Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant's spouse occupies the premises as his primary residence."

51

Gallagher*,* NYLJ , Mar. 6, 1991, at .23, col.3 (App. Term, 1st Dept.); New York

Univ. v Benison, NYLJ, Oct. 27, 1988, at 23, col 2 (App Term, 1st Dept).

Park is, in any event, distinguishable: The Appellate Division overruled the

Appellate Term's grant of summary judgment to the landlord, noted that the

landlord had accepted rent from Power for years, but remanded the case for the

lower court to determine whether Power "co-occupied the subject apartment with

[the tenant] in a 'loving -- immediate family type relationship' since at least 1974."

The clear import of Park Holding was that if the lower court failed to find that

Power had co-occupied the apartment with the tenant of records in a family-like

relationship, Power would not be entitled to succession, whether the landlord had

accepted checks from Power or not.

The District Court's reliance on 80 Delancey LLC v. Gee Hong Lee , 25

Misc.3d 131(App Term, 1st Dept 2009) is similarly misplaced. Order at 6, A-99.

There, the named tenant had long ago vacated the premises and the remaining

occupants openly paid rent in their own names for 14 years. Here, the named

tenant, Mr. DiMatteo, continues to occupy the apartment, and rent was paid out of

a bank account he shared with the co-occupant. Moreover, the Appellate Term's

decision in Delancey would seem to fly in the face of a long line of cases that find

that a rent regulatory tenancy cannot be created by waiver or estoppel. Ruiz v.

Chwatt Assocs., 247 A.D.2d 308 ( 1st Dep't 1998) ("Rent stabilization coverage is

a matter of statutory right and cannot be created by waiver or estoppel"); <u>Matter of Jo-Fra Props., Inc.,</u> 27 A.D.3d 298 ( 1st Dep't 2006); <u>Wilson v. One Ten Duane St. Realty Co.,</u> 123 A.D.2d 198,  (1st Dept. 1987) <u>; Mayflower Assocs. v. Grey,</u> N.Y.L.J., Mar. 1, 1994, at 21, col. 1 (App. Term, 1st Dept.); <u>Fedele v. Filiato,</u> N.Y.L.J., June 6, 1990, at 21, col. 2 (App. Term, 2d & 11th Dists).

Even if Defendants wanted to proceed with extreme caution regarding Mr. Hirko's possible future right to succession of Mr. DiMatteo's tenancy, there were avenues open to them that did not involve making misrepresentations to the State Court and to Mr. DiMatteo.  Defendants could have sought declaratory judgment in Supreme Court on the issue of whether acceptance of  rent from a co-occupant would be deemed a waiver of Sullivan's right to later contest succession rights.

Such a proceeding would have clarified the issue for Sullivan (if, indeed, clarification was necessary, in light of the line of appellate cases cited above) without making an unwarranted and unlawful threat of eviction to Mr. Hirko and Mr.DiMatteo, much less attempting to have them evicted.

It is never "understandable and appropriate" for a lawyer to commence an eviction proceeding under the facts at issue herein, nor to make false statements in a verified pleading, and the District Court erred in so finding.

# VII. CONCLUSION

Mr. Dimatteo's FDCPA claim arose because (1) the defendants first threatened and then initiated a summary eviction action alleging non-payment, when the defendants knew that all the rent allegedly due had already been tendered; (2) the defendants alleged the existence of a lease between the landlord and Mr. DiMatteo, when they knew or should have known that no such lease existed; and (3) the defendants asked for an award of legal fees, despite the fact that there was no legal basis for the award of such fees.

Upon being threatened with eviction, Mr. DiMatteo retained counsel (the undersigned), to protect him from losing his home.

In the opinion of the District Court, Mr. DiMatteo's seeking counsel, as well as the fact that the violations occurred in State Court made Mr, DiMatteo ineligible for relief under the FDCPA.

Mr. DiMatteo asserts that the behavior engaged in by the Defendants is exactly the sort of behavior that Congress sought to ban in adopting the FDCPA. Punishing Appellant for seeking the assistance of an attorney; for having his rights violated in a state court litigation context rather than in some other setting; or for being personally aware of the reasons for Defendants' misconduct departs from the law and undermines the protections provided to consumers, including Appellant, by Congress.

The District Court's order should be reversed, and this case remanded for further proceedings under the FDCPA and, pursuant to pendant jurisdiction, under New York Judiciary Law § 487.

Respectfully submitted,

*s/Elizabeth Shollenberger*

*s/Daniel A. Schlanger*

Schlanger & Schlanger, LLP
Elizabeth Shollenberger, Esq.
Daniel A. Schlanger, Esq.
343 Manville Road
Pleasantville, NY 10570
(914) 946-1981
elizabeth.shollenberger@schlangerlegal.com
daniel.schlanger@schlangerlegal.com
*ATTORNEYS FOR APPELLANT*

## CERTIFICATION PER FED. R. APP. P. 32(A)(7)(C)

This is to certify that the foregoing brief complies with the 14,000 word limitation

requirement of Fed. R. App. P. 32(a)(7)(B), in that the brief is calculated by

Microsoft Word to contain 13,274 words, exclusive of the Table of Contents and

Table of Authorities.


*s/Elizabeth Shollenberger*

*s/Daniel A. Schlanger*

Schlanger & Schlanger, LLP
Elizabeth Shollenberger, Esq.
Daniel A. Schlanger, Esq.
343 Manville Road
Pleasantville, NY 10570
(914) 946-1981
elizabeth.shollenberger@schlangerlegal.com
daniel.schlanger@schlangerlegal.com
*ATTORNEYS FOR APPELLANT*